USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/16/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREEN EARTH ENTERPRISE, LLC,

                Plaintiff,

-against-

SANA BENEFITS, INC.,

                Defendant.

---

24-CV-01852 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

In this action involving a claim of breach of contract, Defendant has moved to dismiss the action for lack of personal jurisdiction. For the reasons that follow, the motion is **DENIED**.

## BACKGROUND[1]

Plaintiff Green Earth Enterprise, LLC is a commercial printing business located in New York that performs printing operations in New York. Dkt. No. 22 ("First Amended Complaint" or "FAC") ¶ 5. Plaintiff allegedly contracted with Defendant Sana Benefits, Inc., a corporation incorporated in Delaware with a principal place of business in Texas, for Plaintiff to provide printing and mailing services to the Defendant. *Id.* ¶¶ 2, 5–7. Defendant is not registered to do business in New York, and it does not own or lease property or have assets in New York. *See* Dkt. No. 19 ("Fitch Decl.") ¶ 3.

In or around December 2020, Defendant contacted Plaintiff to inquire about using Plaintiff's printing and mailing services, and the parties subsequently entered into an agreement under which Defendant agreed to purchase custom printing packages and mailing services from

---

[1] The facts are drawn from the allegations in the First Amended Complaint (Dkt. No. 22) and from affidavits submitted in connection with the parties' briefing. The Court shall refer to the parties' briefing as follows: Dkt. No. 18 ("Mot."); Dkt. No. 25 ("Opp."); Dkt. No. 27 ("Reply").

Plaintiff. FAC ¶¶ 6–7. Defendant consistently utilized Plaintiff's services from 2021 to 2023, allegedly without dispute. *Id.* ¶ 8.

In late 2022, Defendant reached out to Plaintiff to inquire whether Plaintiff could provide new pricing for printing and mailing custom printed paper packages to Defendant's customers. *Id.* ¶ 10. Plaintiff provided Defendant with pricing options in early 2023, including an option to order products "based on an 'a la carte' menu by quantities mailed per week," or to commit to order a minimum number of packages for print and mailing per year at a lower rate per package. *Id.* ¶ 11. Defendant chose the latter option, and on or about March 1, 2023, the parties entered an agreement in which, beginning March 10, 2023, Defendant agreed to order and pay for 35,000 custom printed paper packages over the course of one year to be mailed to Defendants' members, at a specified flat rate per package based on the total number of promised orders. *Id.* ¶¶ 12–16. On or about December 4, 2023, Defendant, after ordering only 10,581 packages, "abruptly breached the contract" by "indicat[ing] [to Plaintiff] that Defendant was terminating its contract with Plaintiff based on a downturn in Defendant's business." *Id.* ¶¶ 20–21.

Plaintiff commenced this action for breach of contract against Defendant on March 12, 2024. *See* Dkt. No. 1. Defendant filed a motion to dismiss the complaint on May 20, 2024, for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *See* Dkt. No. 17. On June 20, 2024, Plaintiff amended the complaint. *See* Dkt. No. 22. On July 3, 2024, Defendant filed a letter indicating that it intended to rely on its previously filed motion to dismiss pursuant to Rule 12(b)(2), but that in light of the First Amended Complaint, it would withdraw the portion of the motion pursuant to Rule 12(b)(6). *See* Dkt. No. 23.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (internal references omitted). The plaintiff must make "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (internal references omitted). Where, as here, the court relies on pleadings and affidavits, rather than conducting a "full-blown evidentiary hearing," the plaintiff "need only make a prima facie showing of personal jurisdiction over the defendant." *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008) (internal references omitted). The Court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id.*

## DISCUSSION

**I.    Legal Principles Concerning Personal Jurisdiction**

For a federal court to exercise personal jurisdiction, three requirements must be met: (1) plaintiff's service of process upon defendant was procedurally proper; (2) a statutory basis for personal jurisdiction exists; and (3) the exercise of personal jurisdiction comports with constitutional due process under the Fourteenth Amendment. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012). Defendant asserts that the second and third requirements have not been met in this case.

## II. Plaintiff Has Established Personal Jurisdiction

### A. There is Jurisdiction Over Defendant Under New York's Long-Arm Statute

Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure:

> Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]

Fed. R. Civ. P. 4(k)(1)(A).

New York law, in turn, provides for general and specific jurisdiction over non-domiciliary defendants. *See Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 417 (S.D.N.Y. 2009). Plaintiff does not assert general jurisdiction over Defendant, but argues that a provision of New York's "long-arm statute," C.P.L.R. § 302 ("Section 302"), provides for specific jurisdiction over Defendant. *See* Opp. at 4–7. The statute provides, in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
>   1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

C.P.L.R. § 302(a)(1).

The jurisdictional inquiry under Section 302(a)(1) is twofold: "[U]nder the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024) (internal references omitted).

With respect to the first prong, the transaction of business must involve "purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 277 (internal reference omitted). "New York decisions[,] . . . at least in their

4

rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007) (internal references omitted). "[T]he mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business." *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 387 (S.D.N.Y. 2012) (internal references omitted). On the other hand, "Section 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction." *Am. Girl, LLC*, 118 F.4th at 276 (internal references omitted). The quality of a defendant's New York contacts is the "primary consideration" in deciding whether the defendant transacted business in New York. *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). A defendant transacts business in New York when, "on his or her own initiative . . . [the defendant] projects himself or herself into this state to engage in a sustained and substantial transaction of business." *Id.* at 382 (internal references omitted).

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated and executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments in the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (internal references omitted). "Although all factors are relevant, no one factor is dispositive and other factors may be considered." *Id.* at 23. The court must look to the totality of the circumstances. *Id.*

5

In this case, viewing the allegations in the light most favorable to Plaintiff and drawing reasonable inferences in Plaintiff's favor, Plaintiff has pled sufficient facts to show that Defendant projected itself into New York by reaching out to Plaintiff—a New York printing operation—to inquire about using Plaintiff's services, entering into agreements with Plaintiff, and benefiting from Plaintiff's goods and services on an ongoing basis over the course of several years.

Turning to the first factor delineated above, the allegations show that Defendant had an ongoing contractual relationship with Plaintiff, a New York corporation. Defendant first contacted Plaintiff in or about December 2020; the parties thereafter entered into a contract for the production and mailing of physical items, and "Defendant utilized Plaintiff's services consistently, without dispute, from 2021 to 2023." FAC ¶¶ 6–8. The relationship went on for years, and in early 2023, the parties again entered into an agreement in which Defendant agreed to purchase 35,000 printed packages over the course of a year. *Id.* ¶¶ 13, 15. Overall, this factor weighs in Plaintiff's favor. *See Aquiline Cap. Partners*, 861 F. Supp. 2d at 387–88 ("Courts have found [an ongoing contractual relationship] where the business lasted or was expected to last over several years;" where the parties maintained a relationship for over two years, this factor weighed in favor of finding jurisdiction).

The second factor also weighs in favor of finding jurisdiction. Although Plaintiff has not identified any meetings or negotiations that occurred in New York, "[p]hysical presence . . . is neither dispositive nor critical to establishing personal jurisdiction." *Id.* at 388. Dealings over the phone and over mail and emails can be considered where the defendant sought out the New York forum. *See, e.g., id.*; *Starke v. Krupica*, No. 22-cv-04464 (DLC), 2022 WL 17669618, at *2 (S.D.N.Y. Dec. 14, 2022). In this case, Plaintiff has not provided much information about the

dealings and negotiations between Plaintiff and Defendant, but the allegations make clear that Defendant projected itself into New York and sought the benefits and privileges of this forum. Drawing all inferences in Plaintiff's favor, Defendant—first in 2020 and again in late 2022 (with respect to the particular agreement at issue in this dispute)—proactively reached out to and sought the services of Plaintiff, a New York corporation, negotiated pricing for Plaintiff's ongoing services (initially and again in early 2023), and benefited from the goods and services provided by Plaintiff's New York-based printing operation over the course of several years. *See, e.g.*, *Fischbarg*, 9 N.Y.3d at 381–83 (finding that Section 302(a)(1) was satisfied where California defendants phoned and sought out plaintiff, a New York attorney, to represent them in an Oregon federal action and established an ongoing attorney-client relationship with plaintiff; defendants "engaged in sustained and substantial transaction of business in New York" by their "solicitation of plaintiff in New York and their frequent communications with him in this state"). Defendant cites to *Whitcraft v. Runyon*, 123 A.D.3d 811, 812 (2d Dep't 2014), to argue that phone or electronic communications from a New York plaintiff to a non-resident defendant alone are insufficient to establish jurisdiction under Section 302. *See* Mot. at 4. But a defendant's physical presence in New York is not required, and *Whitcraft* presented a different set of facts, in which the New York *plaintiff* (not defendant, as here) reached out to the Colorado defendant by phone and email to request a loan, but no agreement was ever reached. 123 A.D.3d at 811–12.

    The third and fourth factors are inapplicable to this case or cannot be considered because the Court does not have sufficient information, and they are thus neutral factors. Overall, viewing the allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has met its *prima facie* burden of showing that Defendant projected itself into New York and sought to avail itself of the benefits and privileges of this

jurisdiction. Moreover, the claims at issue here arose directly from Defendant's contacts with New York in reaching out to Plaintiff in late 2022 after having already been a customer of the business for multiple years, negotiating and entering an agreement in March 2023 for tangible physical items and services to be performed in New York, and benefiting from Plaintiff's performance of at least a portion of the promised printing and mailing services. Defendant does not dispute these key facts.

### B. The Exercise of Jurisdiction Comports with Constitutional Due Process

In addition to satisfying New York state law requirements, the exercise of personal jurisdiction over Defendant in this case is consistent with due process under the United States Constitution. Due process requires that "the defendant 'have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Licci ex rel. Licci*, 732 F.3d at 169 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This involves a two-step inquiry: (1) the court must determine whether the defendant has minimum contacts with the forum; where specific jurisdiction is asserted, "minimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there"; and (2) the court must consider "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 170 (internal references omitted). With respect to the second step, courts look to factors such as the burden of the exercise of jurisdiction on the defendant, the interests of the forum state in adjudicating the case, and the plaintiff's interests. *Id.*

Here, for the same reasons the Section 302(a)(1) inquiry is satisfied, the minimum contacts requirement is also satisfied. As alleged in the First Amended Complaint, Defendant purposefully reached out to Plaintiff to inquire about using Plaintiff's New York-based services

in 2020 and did use those services, subsequently contacted Plaintiff again in late 2022 to re-negotiate pricing terms and place further orders, and entered an agreement with Plaintiff in March 2023 through which it received the benefit of Plaintiff's goods and services through its New York operation. Defendant argues, citing to *Walden v. Fiore*, 571 U.S. 277 (2014), that the Court must look to *Defendant's* contacts with the forum, not Plaintiff's, and that Plaintiff cannot be "'the only link between the defendant and the forum.'" Mot. at 5 (quoting *Walden*, 571 U.S. at 285). But in *Walden*, the defendant had no contacts with the forum state, Nevada. Rather, the defendant—a law enforcement agent—approached, searched, and questioned the plaintiff, seized the plaintiff's cash, and allegedly drafted a false probable cause affidavit, all in Georgia; the fact that the plaintiff was *en route* to Nevada, or that the defendant knew of the plaintiff's Nevada connections, was insufficient to establish minimum contacts in Nevada. 571 U.S. at 288–89. But here, Defendant's *own* purposeful contacts with New York establish jurisdiction. Defendant purposefully reached into New York by contacting Plaintiff in New York to negotiate and enter into a business relationship, entered into commercial agreements with Plaintiff, and benefited from the goods and services of Plaintiff's New York-based operation.

With respect to the second part of the due process inquiry, because Defendant purposefully directed activities into New York, Defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Licci*, 732 F.3d at 173 (internal references omitted). Defendant has advanced no credible argument as to why personal jurisdiction would not comport with fair play and substantial justice under the circumstances of this case, and there is no indication that it would be unreasonable to exercise personal jurisdiction over Defendant in New York. Overall, permitting the claims to be adjudicated in New York comports with due process.

## CONCLUSION

For the reasons above, Plaintiff has met its burden of establishing personal jurisdiction over Defendant. Defendant's motion to dismiss is **DENIED**. The Clerk of Court is directed to terminate Dkt. No. 17.

Dated: May 16, 2025
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge